**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARK A. MCCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-571-TAB-RLY |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO REMAND**

**I.     Introduction**

Plaintiff Mark McClure brings this action challenging Commissioner Carolyn W.

Colvin's decision denying him social security benefits.  McClure contends he has a number of

impairments that support a finding of disability, including degenerative disc disease, left ulnar

neuropathy, degenerative joint disease (primarily of the left knee), headaches, anxiety, and

depression/adjustment disorder.  The Administrative Law Judge denied benefits, and the

Commissioner affirmed.

McClure argues that the ALJ improperly: (1) assessed his severe impairments; (2)

assessed his credibility; (3) relied on the consultative examinations from Family Medical Center

and Circle City Medical Center instead of the consultative examination from Dr. Thomas

Trainer; (4) assessed his RFC; and (5) relied on the vocational expert testimony.  The Court held

oral argument on August 20, 2013.  For the reasons below, the ALJ's decision is legally sound

and supported by substantial evidence.  Therefore, the Commissioner's decision is affirmed, and

McClure's motion to remand [Docket No. 15] is denied.

## II.     Background

### A.     Medical Evidence

In March and April 2007, McClure sought treatment at the Veterans Medical Center for chronic neck pain, degenerative joint disease, and lower back pain with x-rays confirming mild degenerative changes.  [A.R. at 248–55, 259–61, 373–82, 387–89.]  In May 2007, McClure underwent a consultative examination which noted that he was in a previous car accident, which initiated his pain.  [A.R. at 180–83.]

In September 2007, McClure returned to the VA for degenerative joint disease, osteoarthritis, and lumbago.  [A.R. at 189, 245–48.]  In September 2007, McClure sought treatment for anxiety and received a prescription for Xanax.  [A.R. at 189, 243–45, 301, 369–70.]  In October 2007, McClure had a physical therapy consultation for chronic back pain, but the therapist did not recommend further therapy because the therapist was unable to reproduce McClure's pain.  [A.R. at 188, 241–42, 300–01, 369–69.]  An abdominal ultrasound showed cholelithiasis and fatty-replaced liver.  [A.R. at 259–260, 386–87.]  In October 2007, McClure was treated at the VA for degenerative joint disease, lumbago, chronic neck and back pain, osteoarthritis, and anxiety.  [A.R. at 188, 239–41, 300, 365–68.]  A December 2007 liver function test was abnormal with elevated transaminases/enzymes and recommended alcohol abstinence.  [A.R. at 188, 234–38, 300, 361–65.]

A January 2008 cervical MRI revealed left neuroforaminal disc herniation causing severe left neuroforaminal narrowing and moderate right neuroforaminal narrowing.  [A.R. at 256–57.]  A lumbar MRI confirmed posterior central and left paracentral disc protrusion.  [A.R. at 258–59, 384–86.]  January 2008 VA records noted lumbago and lower back pain as well as pain around

the left eye after a car accident.  [A.R. at 187, 230–33, 299, 350–60.]  McClure later returned for

osteoarthritis, degenerative joint disease, lumbago, tingling in his arms, numbness, and increased

anxiety.  [A.R. at 187, 226–29, 299, 353–56.]  McClure had abnormal MRIs and was referred to

physical therapy with note of past alcohol abuse and depression.  [*Id*.]

Between February and March 2008, the VA treated McClure for lumbago, lower back

pain, and cervical radiculopathy/brachial neuritis. [A.R. at 186, 224–25, 298–99.]  McClure had

numbness and tingling in his left arm with constant low grade headaches and neck pain, initially

attributable to his car accident.  [A.R. at 186, 217–23, 298, 427–31, 434–51.]  A March 2008

EMG/nerve study revealed abnormal results confirming mild left ulnar nerve neuropathy at the

elbow and cubital tunnel syndrome.  [A.R. at 186, 215–16, 298, 342–43.]  McClure had a

cervical epidural steroid injection administered but by April 2008 his pain returned.  [A.R. at

185, 190–214, 256, 297, 302–03, 320–40, 383–84.]  At the end of April 2008, the VA treated

McClure twice for similar symptoms.  [A.R. at 296–297, 311–17.]

In May 2008, psychologist Dr. Perry examined McClure and noted that McClure was

previously in the army (1982–1986), divorced twice with four children, woke at 3:00 a.m. every

morning to take pain medication, took care of his mother, felt depressed, and was medicated with

Xanax.  [A.R. at 269–72.]  Dr. Perry diagnosed McClure with adjustment disorder with mixed

anxiety, depressed mood, and assigned McClure a GAF of 70.[1]  [*Id*.]

A June 2008 physical therapy report noted McClure's pain with compression, lumbar

spine tender to prone, tender palpation at C5-6, spasm in the lower back with reports of his left

---

[1]A GAF score of 61–70 suggests that the claimant has mild symptoms or mild difficulty
with social and occupational functioning.  *Bartrom v. Apfel*, 2000 U.S. App. Lexis 23802, *3 n.3
(7th Cir. Sept. 20, 2000).

foot falling asleep, and that he was dropping things.  [A.R. at 296, 307–10.]  State agency

psychologist Randal Horton checked off a psychiatric review technique form listing 12.04

affective disorder with mild difficulties in concentration, persistence, and pace.  [A.R. at

273–86.]

July 2008 VA records note McClure's pain was exacerbated by the injection with

persistent neck pain, his head felt "heavy," he was participating in physical therapy, and using a

TENS unit.  [A.R. at 304–06, 425–26.]  McClure began using Gabapentin, which made him

lethargic.  [*Id.*]  McClure was discharged from therapy two days later after no relief and noted

that his left leg was giving out.  [A.R. at 422–24.]  In an August 2008 questionnaire, McClure

wrote that he was experiencing dull, constant headaches three or four times per week, treated by

pain pills or a cold compress and lasting fifteen to thirty minutes at a time, sometimes waking

him up from his sleep.  [A.R. at 176.]  In October 2008, McClure was treated for anxiety,

degenerative joint disease, chronic neck/low back pain and left knee pain, with anxiety not

controlled by Xanax.  [A.R. at 420–22.]  McClure was treated for anxiety, adjustment problems,

depression, stress, loss of sleep, loss of appetite, irritability, bad temper, and feelings of being

overwhelmed.  [A.R. at 414–17.]  He was diagnosed with adjustment disorder with mixed

emotions versus substance induced mood.  [*Id.*]

A left knee MRI in November 2008 showed thinning of the articular cartilage less than

50% of the medial femoral cartilinous surfaces and fissure of the posterolateral tibial surface.

[A.R. at 407–08, 432–33.]  A VA psychology note listed McClure as "on edge and everyone was

getting on his nerves."  [A.R. at 413–14.]  McClure was advised to come in, although due to

personal issues, he was not able to adhere to the preferred timeline.  [*Id.*]

4

B.      *McClure's Testimony*

McClure testified that he previously utilized traction, physical rehabilitation, steroid injection, medications, a TENS unit, and visited with neurosurgery.  [A.R. at 26–27.]  He alleged disability due to a combination of neck and back pain.  [A.R. at 26.]  At the time of his hearing, McClure was being treated at the VA and using prescription narcotics and a TENS unit for pain management.  [A.R. at 25, 27.]  He had constant low back pain and feelings of "bone rubbing." [A.R. at 27–28.]  The TENS unit only temporarily relieved his pain.  [*Id*.]  McClure's neck pain restricted his sleep and made his head feel "heavy."  [A.R. at 26, 31.]  The TENS unit failed to relieve his cervical pain to the extent that it relieved his lumbar pain.  [*Id*.]  McClure did not use his left hand or arm at all, only relying on the right arm and noted that the most he could lift was a gallon of milk.  [A.R. at 33.]

McClure had difficulty sitting and standing due to pain, a "burning sensation," and his back tended to spasm if he was not moving.  [A.R. at 29.]  McClure uses a cane, which was not doctor prescribed, feeling that he needs it for safety reasons (fear of falling). [*Id*.]  He experienced side effects from his medications which keep him in a fog, do not relieve his pain, require him to take naps and create difficulty for him to remember things.  [A.R. at 27, 34.] McClure took Xanax for his anxiety, stemming from his inability to work.  [A.R. at 34–35.]  He did not do yard work and if he performed daily chores, he did them in stages.  [A.R. at 30.] McClure hired someone to install a side door at his house to avoid walking up and down steps and put a plastic chair in his shower so he would not have to stand.  [A.R. at 36.]

III.     **Discussion**

A.     *Standard of Review*

The Social Security Administration authorizes judicial review of the Commissioner's final decision regarding whether substantial evidence supports that decision and whether the Commissioner committed legal error.  42 U.S.C. 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shideler v. Astrue*, 688 F.3d 306, 310. (7th Cir. 2012).  The ALJ is obligated to consider all relevant medical evidence and cannot simply choose to emphasize facts that support a finding of nondisability while ignoring evidence that suggests disability.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).   If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected*. Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The ALJ need not mention every piece of evidence, so long as there is a logical link from the evidence to the conclusion.  *Denton*, 596 F.3d at 425.

A reviewing court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ.  *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).  Where an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  Where there is an error of law, the court must remand regardless of the volume of evidence otherwise supporting the ALJ's decision.  *Freeman v. Astrue*, 816 F. Supp. 2d 611, 615 (E.D. Wis. 2011).  However, if reasonable minds could disagree on whether a claimant is disabled, the court must affirm the Commissioner's decision denying benefits.  *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

6

B.      *Substantial Evidence Supports the ALJ's Assessment of McClure's Impairments*

McClure suggests that the ALJ erred in finding his low left knee cartilage, mild left ulnar nerve neuropathy at the elbow, cubital tunnel syndrome, anxiety, and cardiac impairment to be non-severe impairments.  [Docket No. 18 at 10–11, 15.]  However, the ALJ found McClure's cubital tunnel syndrome to be severe, noting that left ulnar neuropathy is synonymous with cubital tunnel syndrome, and finding McClure's ulnar neuropathy to be a severe impairment.  [A.R. at 12.]  Similarly, the ALJ found that McClure had a limitation related to his left knee, finding that his degenerative joint disease affected his left knee.  [A.R. at 11.]  The ALJ made specific references to the record, including the MRI showing McClure's thinning left knee cartilage and an EMG showing mild left ulnar neuropathy. [A.R. at 12, 342, 408.]  Therefore, McClure shows no error in the ALJ's assessment of his neuropathy, cubital tunnel syndrome, and knee impairment.

1.      *Anxiety*

McClure argues his anxiety was a severe impairment because he was mildly limited in concentration, persistence, and pace, and had some social limitations, as indicated by the state agency findings and a GAF score of 70.  [Docket No. 18 at 13.]  However, mild limitations under the Commissioner's regulations indicate a non-severe impairment.  20 C.F.R. § 404.1520a(d).  The ALJ accounted for these mild findings, and observed that they did not indicate a severe impairment.  [A.R. at 13.]  Further, McClure admitted he was able to socialize.  [A.R. at 133.]

McClure highlights various treatment notes and diagnoses which he claims the ALJ should have considered in assessing the severity of his anxiety.  [Docket No. 18 at 14.]  However, the ALJ accounted for McClure's allegations of mental illness and prescribed Xanax.

The ALJ noted, and McClure's counsel acknowledged at oral argument, that McClure was not diagnosed as clinically depressed.  [A.R. at 13.]  The ALJ also accounted for McClure's alleged medication side effects, which McClure now suggests augmented his mental limitations.  [A.R. at 15.]  However, as McClure's counsel conceded during oral argument, the record does not reflect that McClure complained to his treating physicians of side effects from any medication, but rather that he tolerated his medication well.[2]  [A.R. at 311, 317.]

      2.     *Failure to Pursue Treatment*

The ALJ observed that McClure cancelled a referral for mental health counseling and failed to attend a stress group.  [A.R. at 13, 411, 414, 416–417.]  In his appeal, McClure contests this finding, claiming that he sought mental health treatment, while arguing that the ALJ failed to consider that "a failure to seek mental health treatment may be the result of mental illness rather than evidence that a mental impairment is not severe."  [Docket No. 18 at 14.]  An ALJ must consider a claimant's reasons for failing to pursue treatment.  *See Surratt v. Astrue*, No. 1:08-cv-06588, 2009 WL 51840009, at *19 (N.D. Ill. Dec. 21, 2009) (noting the relevance of claimant's allegations regarding failure to follow treatment).  However, McClure's claim that his mental illness contributed to his failure to follow treatment is only in this appeal.  No such allegation appears anywhere in the record below.  McClure's only explanations for his failure to follow treatment were personal issues and caring for his mother.  [A.R. at 442.]

---

      [2]Counsel cited to A.R. at 425–26, but then admitted this was not a valid citation to the assertion in question.  Counsel provided no other citation on this point.

3.      *Liver Study*

McClure also claims that the ALJ failed to address evidence from September through December 2007.  [Docket No. 18 at 11.]  However, this evidence reflects only diagnoses, medications, and the evaluation of an abnormal liver study, evidence which has no bearing on McClure's claim.  [A.R. at 188–89, 234–241.]  Otherwise, the notes suggest that McClure received anxiety medication, and had ongoing complaints of degenerative disc disease, two facts that the ALJ incorporated into his decision.  Therefore, McClure shows no error with respect to these treatment notes.  *See Burnett v. LFW Inc.*, 427 F.3d 471, 483 (7th Cir. 2006) (noting that diagnosis alone does not prove disability).

4.      *Headaches*

McClure also argues that the ALJ failed to address limitations from his headaches, but he fails to highlight any evidence in the record supporting the presence of limitations from this condition, beyond his subjective complaints.  [Docket No. 18 at 15.]  *See Eichstadt v. Astrue*, 534 F.2d 663, 668 (7th Cir. 2008) (noting that the claimant bears the burden of producing medical evidence that supports his disability claim).

5.      *Combination of Impairments*

Otherwise, McClure argues that the ALJ failed to consider the combination of his severe and non-severe impairments, highlighting various treatment notes and diagnoses.  [Docket No. 18 at 16.]  Yet McClure offers no actual analysis of the treatment notes or their significance. Therefore, McClure shows no error in the ALJ's assessment of these impairments as non-severe.

C.    *Substantial Evidence Supports the ALJ's Credibility Assessment*

McClure argues that the ALJ erred in assessing his credibility, claiming that the ALJ relied on boilerplate language, and included no real credibility analysis.[3] [Docket No. 18 at 16–17, 19.] The Seventh Circuit has rejected the use of boilerplate language by an ALJ in some instances. *See Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012) (stating that such boilerplate language fails to inform the court of the specific evidence considered in determining claimant's credibility and fails to link the ALJ's conclusions to evidence in the record). Although the ALJ's opening statements regarding McClure's credibility are somewhat generic [A.R. at 15], the ALJ goes on to address specific evidence in the record. [A.R. at 15-16.] Therefore, the ALJ's use of boilerplate language does not undermine his credibility assessment.

McClure asserts that the ALJ mistakenly relied on objective evidence in his credibility assessment. [A.R. at 11.] ALJs are in the best position to assess the forthrightness of claimants and therefore the courts give their credibility determinations special deference. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Thus, an ALJ's credibility determination will be reversed only if the claimant can show that it was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

McClure attacks the ALJ's credibility findings. He claims that an individual need not be required to undergo surgery to be considered disabled. [Docket No. 18 at 17.] However, McClure's lack of surgery is relevant where it correlates to his otherwise conservative treatment and response to the TENS unit. *See Stanley v. Astrue*, No. 1:11-cv-00298, 2012 WL 1158630, at

---

[3]McClure also claims the ALJ did not cover credibility factors. [Docket No. 18 at 19.] However, the hearing reflects that the ALJ and McClure's attorney questioned him on daily activities, medication, and other relevant factors. [A.R. at 22–41.]

*10 (N.D. Ind. Apr. 6, 2012) (affirming relevance of ALJ's observation of relatively conservative treatment for back pain in assessing credibility).

McClure argues that his injury in the 1980s was not the immediate cause of his disability, but rather a car accident in 1999 that caused worsening symptoms. [Docket No. 18 at 17.] McClure concedes that his back and neck problems began with a car accident in 1988, although he claims it worsened a few years prior to his examination. [A.R. at 181, 344.] Despite complaining of disabling symptoms, McClure was able to get on and off the examination table without support in 2007. [A.R. at 182.] The ALJ observed that a physical examination in March 2008 was essentially unremarkable, McClure failed to follow through with physical therapy, and was the primary caretaker for his mother. [A.R. at 15, 219–220, 270, 422, 442.] Therefore, the ALJ was entitled to consider that McClure worked with the conditions he now alleges are disabling.

McClure argues that the record reflected that he consistently used a cane, and no doctor disputed this use. [Docket No. 18 at 18–19.] He also argues that Dr. Trainer indicated that use of the cane was medially necessary at times. [*Id*. at 18.] However, as the ALJ noted, the record does not reflect that use of the cane was prescribed by any medical source. [A.R. at 15.] When faced with evidence both supporting and detracting from a claimant's allegations, the resolution of competing arguments is for the ALJ to determine. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).

For the above reasons and absent any evidence to the contrary, substantial evidence supports the ALJ's credibility assessment. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it

does the opportunity to observe the claimant testifying.  Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.").

   D.   *The ALJ Properly Assessed McClure's Consultative Examinations*

   McClure argues that the ALJ erred in assigning substantial weight to the consultative examinations from Family Medical Center and Circle City Medical Center while discounting the more recent consultative examination from Dr. Trainer.  [Docket No. 18 at 11–12, 18.]  The ALJ afforded less weight to Dr. Trainer's opinion because it did not reference McClure's symptomatic treatment and the possibility that McClure's condition could improve if he complied with physical therapy.  [A.R. at 15–16.]  The ALJ also discounted Dr. Trainer's findings to some degree because Dr. Trainer did not review McClure's MRI results.  [A.R. at 16, 456–57.]  In doing so, the ALJ also noted that no treating medical source classified McClure as totally and permanently disabled.  [A.R. at 16.]  McClure rightly conceded this point at oral argument as well.

   The ALJ  has the responsibility to determine the weight afforded to different opinions.  *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).  The ALJ properly rejected these findings where they were inconsistent with the record as a whole.  The record contains no other evidence, beyond his subjective complaints, that McClure was unable to stoop or sort, handle, or use paper files.  Indeed, in his application for disability benefits, McClure indicated that he had no difficulty with manipulation of his hands.  [A.R. at 134.]  Even Dr. Trainer indicated that McClure had no difficulty with manipulation of his hands, elbows, or shoulders. [A.R. at 457.]

McClure argues that the ALJ should have ordered a new consultative examination and additional MRIs if there was confusion in the record.  [Docket No. 18 at 12.]  The Commissioner will order a consultative examination when unable to obtain needed information from a claimant's medical sources.  20 C.F.R. § 404.1519(a).  In fact, the ALJ ordered Dr. Trainer's examination after the hearing.  [A.R. at 39.]  The ALJ incorporated that opinion, although not entirely, where the findings were inconsistent with the record as a whole.  For example, the ALJ noted that Dr. Trainer concluded McClure had degenerative lumbar and cervical disc disease without significant nerve deficit or impingement.  [A.R. at 14.]  Assessment of Dr. Trainer's opinion is within the ALJ's discretion, as the determination of an individual's RFC need not be based on a specific medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner.  20 C.F.R. § 404.1527(e)(2).  Therefore, McClure shows no error in the ALJ's assessment of his consultative examinations.

E.    *The ALJ Properly Assessed McClure's Residual Functional Capacity*

McClure claims that the ALJ failed to perform function-by-function assessment in his determination of McClure's RFC.  [Docket No. 18 at 10.]  The Seventh Circuit rejected this mechanical rule that McClure advocates.  In an unpublished decision, the court held that "[a]lthough the 'RFC assessment is a function-by-function assessment,' . . . the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient."  *Knox v. Astrue*, 327 Fed. App'x. 652, 657 (7th Cir. 2009) (unpublished decision) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003)).  Here, the ALJ properly determined McClure's

RFC in light of all the evidence of record, including objective medical evidence and medical opinions.

In regards to sitting and standing, the ALJ noted that McClure's allegations of pain were not entirely credible because McClure showed no medical need for his use of a cane, missed physical therapy appointments, and was the primary caretaker for his mother. [A.R. at 15, 219–220, 270, 306, 422, 442.] McClure also suggests that his ulnar neuropathy caused greater limitations than the ALJ assessed. [Docket No. 18 at 11, 15.] Yet McClure highlights no evidence of any limitations beyond his subjective complaints. [*Id*. at 15.] McClure indicated no problems with his hands in his disability application. [A.R. at 15.] Where the ALJ found McClure not entirely credible, and even Dr. Trainer found no manipulative limitations, McClure provides no supportable evidence that he was more limited that the ALJ found him to be.

McClure also claims that the ALJ should have incorporated limitations in concentration into the RFC assessment, as McClure was mildly limited in concentration, persistence, and pace. [Docket No. 18 at 14.] However, a mild limitation in concentration, persistence, and pace actually indicates that there was no more than minimal limitation, and therefore it is not relevant to the RFC assessment. 20 C.F.R. § 404.1520a(d). Moreover, McClure argues that prescription side effects and subjective pain levels would have affected his ability to remain "on task." [Docket No. 18 at 14, 20, 21.] Yet McClure provides no evidence in support of this contention, beyond his own subjective allegations. [Docket No. 18 at 14.] The ALJ recounted that McClure complained his medications made him groggy, while also noting that McClure was not entirely credible. [A.R. at 15.] The record does not reflect that McClure complained to his treating physicians of side effects from any medication but rather that he tolerated his medication well.

14

[A.R. at 311, 317.]  Therefore, the ALJ provided sufficient explanation for his RFC assessment and substantial evidence supports the ALJ's decision.

F.      *The ALJ Properly Relied on the Vocational Expert's Testimony*

McClure reframes his credibility and RFC arguments to state that the ALJ improperly relied on the vocational expert's testimony.  [Docket No. 18 at 20–21.]  Particularly, McClure highlights his inability to concentrate, stoop, or use his hands.  [*Id.*]  However, McClure fails to point to any credible evidence in the record indicating that he had more than mild limitations in concentration, persistence, and pace, or any limitations in stooping or handling paper and files. *See Schmidt*, 496 F.3d at 846 (finding that an ALJ is "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible")  Therefore, McClure failed to demonstrate that the ALJ erred by relying upon the vocational expert's testimony.

**IV.     Conclusion**

The ALJ's decision is legally sound and supported by substantial evidence.  Therefore, the Commissioner's decision is affirmed and McClure's motion to remand [Docket No. 15] is denied.

Dated: 8/23/2013

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Javitt  Adili
SOCIAL SECURITY ADMINISTRATION
javitt.adili@ssa.gov

Frederick J. Daley Jr.
DALEY DEBOFSKY & BRYANT
fdaley@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Meredith E. Marcus
DALEY DISABILITY LAW, P.C.
601 W. Randolph Street, Suite 300
Chicago, IL 60661

16